Scott, J.
The question presented in this case is: Can a township board of education, organized under the general school law of 1853,. with the consent of the board of education of a town district of the same township, organized under the act of February 21,1849’, make-transfers of adjacent territory to such district?
To understand properly the effect of the act of 1849, it is necessary to know how the law stood on the subject of transfers of territory, at the time of the passage of this act. The school law then, in force was the act of March 7, 1838, with its several amendatory acts. By this act, the township trustees were required to lay off their respective townships into school districts, which they were empowered frop. time to time to alter, at their annual meetings, so as to promote the interest and convenience of the inhabitants.
By the 33d section of the same act, every incorporated city, town,, or borough, not otherwise regulated by charter, was created a separate school district, to be under the supervision of the town authorities ; and the voters of the town were authorized to elect school, directors therein. The 34th section gave the township trustees. power, by and with the consent of the school directors of any such city, town, or borough, situate in their townships, “ to attach thereto* such parts of their respective townships as lie adjacent thereto.”
*So stood the law at the time of the passage of the act of 1849. This act dealt with the existing system as it then stood. It. recognized the school districts in towns, villages, etc., as existing-organizations, the territorial.limits of which had been assigned, and might be changed, in the mode prescribed b3r laws then in force. It was no part of the object of this law to make any change in boundaries of existing school districts, or to prescribe the mode of *471 effecting such changes of boundary as the ever-varying circumstances of communities might, from time to time, demand. All this was already provided for by legislation which was not supposed to need amendment.
But the object and purpose of the act of February, 1849, as indicated by its title, was to provide “ for the better regulation of the public schools in cities, towns,” etc. It was not intended to create new districts, but to provide a better system of regulating the schools in existing ones. It substituted for the former board of three directors, a new one, to consist of six members, to be called a board of education ; prescribed their powers and duties; gave directions as to the management of the schools, the school moneys, and interests ; and also prescribed the mode in which an organization under that act might be affected, by such districts as chose to-adopt it. By the terms of its first section, it might be adopted by any incorporated city, town, or village (not governed, as to schools, by any special law), containing within the town-plat, as laid out and recorded, two hundred inhabitants or more, “ with the territory attached, or hereafter to be attached to said city, town, or village for school purposes.” This provision evidently contemplated that transfers of territory might be thereafter made to any tdwn district, as before, by the township trustees, “ with the consent of the school directors ” of such town district. The act contains no limitation of the then existing powers of the township trustees -T and without providing any new mode of attaching territory, still speaks of territory “ hereafter to be attached.”
*It is true, that the act of 1849, in its 14th section, declares that “upon the adoption of this act, in the manner herein provided, by any city, town, village, or district, all laws now in force therein, inconsistent herewith, are hereby repealed.” But none of its provisions are inconsistent with that part of the law of 1838 which authorized the township trustees to transfer adjacent territory to town districts. The act of 1849 does not deal with that subject. And as it manifestly left the powers of the township trustees tinimpaired, it follows that they could still transfer territory to a town district, with the consent of the school directors therein.
What then was the effect of the law of 1853, now in force, upon that subject?
As to the boundaries of school districts then existing, it made no changes. Whilst it made each organized township in the state a *472 single school district for the general supervision of educational interests, it'declared that the several school districts, then existing, or thereafter to be established, in the several townships, should be regarded as sub-districts. It created a board of education for each township; but excluded from its jurisdiction the territory included within the limits of any city or incorporated village, with the territory annexed thereto for school purposes, -which should organize under that act, or which then was, or might thereafter be governed, as to schools, by any special or other act specified in its 67th section, and among these was the act of February, 1849. To this township board of education, consisting of the township clerk and one director from each sub-district in the township, it gives, in the 14th section, the power of altering and changing, at any regular session (to be held on the third Mondays of April and October, in each year), the sub-districts of the township; thus giving to the township board of education all the powers over this subject which were formerly conferred on the township trustees, and dispensing with previous notice of contemplated changes *in the districts, because they would each be represented in the board by a director acquainted with their wants and their interests.
It has always been the policy of our school laws to provide for changes in the boundaries of school districts, and thus, by giving flexibility to the system, to adapt it to the ever-varying wants, of a growing country, in which the convenience of the present can but faintly indicate the necessities of the future. Accordingly, the act of 1853 carries out the former policy, and, by the thirty-second section, makes each city or incorporated village, including the territory annexed thereto for school purposes, which is not otherwise specially regulated by charter or governed as to schools by laws specified in the 67th section, and which, with the territory annexed, contains not less than three hundred inhabitants, a separate school district, empowered to elect its own board of education, which shall have the same powers as the township board; but still providing that, by agreement between the township board and the board of such town district, transfers of territory, not within the limits of such corporation, maybe made to or from the adjacent country districts. The 35th section gives to the board of education of any city or incorporated village all the powers conferred upon the township boards ; and requires the performance of the liko duties, so far as applicable.
*473 It is very clear, then, that by the consent of .the town districts provided for by the act of 1853, transfers of territory might be made to and from them, by the boards of education of their townships, and that such town districts were placed by this act on the same footing of independence as those organized under the law of 1849. The act of 1853 left the law of 1849, and special acts under which organizations had been effected, in full force; its main purpose being to provide for the organization and regulation of schools outside of such special districts. Its provisions do not therefore, in terms, embrace such special ^districts, except in a few particulars specified in section 67. But this last-named section provided that “ this act shall not be so construed as to repeal, change, or modify in any respect” the provisions of the act of 1849, or any other special acts in relation, to schools. We think, therefore, that it must have been intended to leave the powers, rights, and duties of the boards of education, organized under the act of 1849, wholly unimpaired and unaffected. If they had the power, before the passage of the act of 1853, to accept and incorporate into their district adjacent territory, that power was not taken away. The township trustees, it is true, have no longer power to transfer territory, but the township board of education is fully empowered to make all changes in the territorial limits of districts which they may think expedient; they are invested with plenary powers upon this subject, as to all territory within their jurisdiction, and are expressly authorized to make transfers of territory to or from any town district created by that act, and whose board of education may agree thereto. Town districts organized under the act of 1853, were thus made as independent of the township boards of education as were those organized under the act of 1849. And the language of the 35th section, which, in terms the most general’ and comprehensive, embraces “ the board of education of any city or incorporated village,” without respect to the law under which it may have been organized, makes each of them co-ordinate and equal, as to general powers, with the township boards, and requires them to “ do and perform the like duties, in all respects, so far as applicable.” Those powers and duties can not, it is true, be exercised or discharged, by any district, in a manner inconsistent with the law of its organization, which the 67th section leaves in full force. But there is nothing in the act of 1849 inconsistent with the power of accepting or parting with territory outside of the corporate limits of a town. *474 That act, as we have seen, does not treat of this subject. If additional territory be brought within the ^limits of the city or incorporated village, the public schools of which are organized undei the act of 1849, the township board of education is immediately ousted from all jurisdiction over the same, by the 1st section of the act of 1853, 'and this added territory becomes a part of the town district, without the consent of the school authorities on either side. It could not, therefore, have been intended that the boundaries' of districts, acting under the law of 1849, should remain permanently fixed, as they existed at the time of their organization. Besides, of what avail could it be to attempt a discrimination between districts organized under the act of 1849, and those under the law of 1853 ? Both those acts are in full force ; and the 1st section of the former, and the 66th section of the latter, enable all such districts to change from the one system to the other at their option, and as often as the majority of their voters may choose. Now, of what advantage could it ho to require a town district to' adopt the act of 1853, in order to obtain additional territory, when, after affecting this object, it could immediately readopt the act of 1849 ? It is hardly reasonable to suppose that the legislature intended that changes of district limits, which might be deemed expedient both by township and town boards of education, should be effected only in this circuitous and troublesome mode. The act of 1853, leaving that of 1849 in full force, gives perfect freedom of choice between two systems for the regulation of schools; and there is no reason to believe that the legislature intended to place any obstacles in the way of the operation of either. And we are satisfied that any such a construction of -the proviso contained in the 32d section of the act of 1853, as would authorize a transfer of territory under the one system and prohibit under the other, would be at variance with the legislative intention, however it might be justified by the literal terms of the section.
The view which we have taken of the statutory powers of boards of education, is in accordance with the general *understanding and practice through the state. Many, such transfers of territory have been made; and public policy requires that they should be upheld, if possible, under a fair construction of the law.
The defendants in error prefer a law which permits but light taxation for school purposes, while the majority of their district prefer a different one. And the hardship complained of results *475 from the principle that on such questions majorities must govern. We think that the transfer of territory made in this case by the board of education of Canton township, and accepted by the board | of education of the Canton union school district, was valid and' effectual, and could not be rescinded without the consent of both parties. The judgment of the district court will therefore be reversed, the injunction granted in the case dissolved, and the petition of the plaintiffs below dismissed.
Brinkerhoff, C. J., and Sutliff., Peck, and Gholson, JJ., concurred.